**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:12-CV-213-MOC-DCK**

| | |
|---|---|
| CAMERON MCINTYRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHELSEA THERAPEUTICS | ) |
| INTERNATIONAL, LTD., et al., | ) |
| | ) |
| Defendants. | ) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This stipulation and agreement of settlement is made and entered into by and between

Lead Plaintiff Roman Zak ("Lead Plaintiff")[1] on behalf of himself and the class of persons

defined below, and Defendants Chelsea Therapeutics International, Ltd. ("Chelsea"), Simon

Pedder ("Pedder"), and William Schwieterman ("Schwieterman"), pursuant to Rule 23 of the

Federal Rules of Civil Procedure.

WHEREAS:

A.      On April 4, 2012, Cameron McIntyre filed the initial summons and class action

complaint against Chelsea, Pedder, Schwieterman, J. Nick Riehle, and L. Arthur Hewitt[2] in the

---

[1]      All capitalized words or terms not otherwise defined herein shall have the meanings for
those words or terms as set forth in the section below entitled "Definitions" at ¶1 hereof.

[2]      The original complaint filed by McIntyre named Chelsea, Pedder, Schwieterman, Riehle,
and Hewitt as defendants. After several amendments, the Court upheld the Third Amended
Class Action Complaint (the "TAC") which alleged claims against defendants Chelsea, Pedder,
and Schwieterman who are defined herein as "Defendants" and, along with Lead Plaintiff, are
the "Settling Parties."

United States District Court for the Western District of North Carolina on behalf of himself and all others similarly situated;

B.      On August 16, 2012, the Honorable Max O. Cogburn Jr. appointed Roman Zak as Lead Plaintiff and approved his selection of Faruqi & Faruqi, LLP as Lead Counsel;

C.      On October 5, 2012, Lead Plaintiff filed the Amended Class Action Complaint ("AC") alleging claims against Chelsea, Pedder, Schwieterman, L. Arthur Hewitt, and J. Nick Riehle for (1) violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, and (2) violations of Section 20(a) of the Securities Exchange Act of 1934;

D.      By order dated October 9, 2013 the Court dismissed the AC with prejudice as to all defendants;

E.      On November 8, 2013, Lead Plaintiff timely appealed the Court's order;

F.      On March 16, 2015, a panel of Fourth Circuit judges reversed the Court's October 9, 2013 order and remanded for further proceedings;

G.      On May 29, 2015, Lead Plaintiff filed the Second Amended Class Action Complaint which was then replaced by joint motion on June 25, 2015;

H.      On July 8, 2015, Lead Plaintiff filed the Third Amended Class Action Complaint ("TAC") which removed L. Arthur Hewitt and J. Nick Riehle as defendants and instead asserted claims solely against Chelsea, Pedder, and Schwieterman;

I.      On July 24, 2015, Defendants moved to dismiss the TAC, which, by order dated August 26, 2015, the Court denied in its entirety;

J.      On September 16, 2015, Defendants filed their Answer to the TAC; and on October 6, 2015 the Settling Parties jointly filed their Certification and Report of Fed. R. Civ. P.

2

26(f) Conference and Discovery Plan;

K. Beginning on October 30, 2015, the Settling Parties began exchanging initial disclosures and discovery requests. Defendants produced approximately 70,000 pages of documents, including Chelsea's regulatory file, to Lead Plaintiff which Lead Counsel timely reviewed in advance of the mediation session.

L. Lead Counsel and Defendants' Counsel conducted a mediation session before Jed Melnick, Esq. of JAMS on March 10, 2016;

M. Prior to the mediation session, Lead Counsel conducted an investigation, pursued and reviewed discovery, analyzed the claims, and researched the applicable law with respect to the claims against Defendants and their potential defenses thereto;

N. Lead Counsel and Defendants' Counsel have engaged in arm's-length negotiations with the assistance of an experienced mediator to resolve the claims by Lead Plaintiff and the Class against Defendants, and have now agreed to settle those claims on terms that include the payment of $5,500,000 for the benefit of the Class;

O. Based upon their independent investigation, Lead Counsel and Lead Plaintiff have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiff and the Class, and are in the Class's best interests, and have agreed to settle the claims raised in the Action with the Defendants pursuant to the terms and provisions of this Stipulation, after consideration of (a) the substantial benefits that the Class will receive from the Settlement, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation; and

P. Defendants have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiff in this Action. Defendants expressly have denied and

continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in this litigation. Defendants also have denied and continue to deny, *inter alia*, the allegations that Lead Plaintiff or class members have suffered damage, or were otherwise harmed by the conduct alleged in this litigation. Defendants have asserted and continue to assert that, at all times, they acted in good faith and in a manner reasonably believed to be in accordance with all applicable rules, regulations and laws.

Q. This Stipulation, whether or not consummated, any proceedings relating to this settlement, or any of the terms of this settlement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Settling Parties with respect to any claim of any liability or damage whatsoever, or any infirmity in any claim or defense that Defendants have or could have asserted. Defendants are entering into this Settlement to eliminate the burden, expense, uncertainty, distraction and risk of further litigation.

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action lacked merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby STIPULATED AND AGREED, by and among the parties to this Stipulation, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Settling Parties hereto, that all Settled Claims as against Defendants shall be comprised, settled, released, and dismissed on the merits and with prejudice, and without costs, subject to the terms and conditions set forth in this Stipulation and the exhibits attached hereto:

4

## DEFINITIONS

1. As used hereinafter in this Stipulation, the following terms shall have the following meanings:

 a. "Action" means *McIntyre v. Chelsea Therapeutics Int'l, Ltd.*, et al., No. 3:12-CV-213-MOC-DCK (W.D. N.C.), pending in the United States District Court for the Western District of North Carolina.

 b. "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim to the Claims Administrator and does not opt out of the Settlement.

 c. "Cash Settlement Amount" means $5,500,000.

 d. "Chelsea" means Chelsea Therapeutics International, Ltd.

 e. "Claims Administrator" means Rust Consulting, Inc., the firm retained by Lead Counsel, subject to Court approval, which shall mail and publish the Notices, process Proofs of Claim, and distribute the Net Settlement Fund to Authorized Claimants.

 f. "Class" means all Persons who purchased or otherwise acquired Chelsea common stock in the United States or on the NASDAQ Stock Market during the Settlement Class Period who were allegedly damaged thereby. Excluded from the Class are Defendants; members of the immediate families of Defendants; any firm, trust, partnership, corporation, officer, director, or other individual or entity in which a Defendant has a controlling interest or property interest; and the legal representatives, heirs, successors-in-interest or assigns of such excluded Persons with respect to that excluded purchase or acquisition of Chelsea common stock. Also excluded from the Class is (1) any Person who properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements to be set forth in the Settlement Notice; and (2) any Person who suffered no compensable losses (such

5

as Persons who purchased Chelsea common stock during the Settlement Class Period but sold prior to any partial corrective disclosure).

g.    "Class Distribution Order" means an order of the Court approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein, and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

h.    "Class Member" means any Person who is a member of the Class that has not opted-out or been excluded therefrom.

i.    "Court" means the United States District Court for the Western District of North Carolina.

j.    "Defendants" means Chelsea, Pedder, and Schwieterman.

k.    "Defendants' Claims" means any and all claims, rights, demands, obligations, controversies, debts, damages, losses, causes of action, and liabilities of any kind or nature whatsoever in law or in equity, including both known and Unknown Claims, held at any point from the beginning of time to the date of the execution of this Stipulation, which claims have been or could have been asserted by Defendants against any of the Released Plaintiff Parties and which arise out of or relate in any way to the institution or prosecution of the Action.

l.    "Defendants' Counsel" means the law firm of Wilson Sonsini Goodrich & Rosati, P.C., 701 Fifth Avenue, Suite 5100, Seattle, WA 98104.

m.    "Defendant Releasees" means Defendants Chelsea, Pedder, Schwieterman,  Defendants' Counsel, and each of the aforementioned past, present or future directors, officers, employees, partners, agents, representatives, parents, subsidiaries and

6

affiliates, members, principals, agents, underwriters, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants or auditors, financial or investment advisors or consultants, banks or investment bankers, personal or legal representatives, predecessors, successors, assigns, spouses, marital communities, heirs, related or affiliated entities, any entity in which a Defendants has a controlling interest, any member of a Defendant's immediate family, or any trust of which any Defendant is the settler or which is for the benefit of any Defendant and/or member(s) of his or his family.

n. "Effective Date" means the date upon which the Judgement becomes Final.

o. "Escrow Account" means the interest-bearing account maintained by the Escrow Agent into which the Settlement Amount shall be deposited. The Escrow Account shall be controlled and maintained by Lead Counsel on behalf of Lead Plaintiff and the Class.

p. "Escrow Agent" means Lead Counsel or their duly appointed agent(s). The Escrow Agent shall perform the duties set forth in this Stipulation.

q. "Final Fairness Hearing" means the hearing to be held by the Court to make a final decision pursuant to Federal Rule of Civil Procedure 23 as to whether this Settlement Agreement is fair, reasonable, and adequate and, therefore, should be approved by the Court.

r. "Final," with respect to the Judgment, means the later of: (i) if there is an appeal from the Judgment (other than an appeal pertaining solely to the Court's approval of a Plan of Allocation and/or the Court's award of attorneys' fees, costs or expenses), the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration or a petition for a writ of certiorari and, if certiorari is granted, the

date of final affirmance of the Judgment following review pursuant to the grant; or (ii) the expiration of the time for the filing or noticing of any appeal from the Judgment. Any appeal or proceeding seeking judicial review pertaining solely to (i) Court approval of the Plan of Allocation of the Net Settlement Fund; or (ii) the Court's award of attorneys' fees, costs or expenses, shall not in any way delay or preclude the Judgment from becoming Final or affect the time set forth above for the Judgment to become Final.

       s.     "Judgment" means the final proposed judgment to be entered approving the Settlement substantially in the form attached hereto as Exhibit B.

       t.     "Lead Counsel" means Faruqi & Faruqi, LLP.

       u.     "Lead Plaintiff" means Roman Zak.

       v.     "Net Settlement Fund" means the Settlement Fund less (i) Court awarded attorneys' fees; (ii) Notice and Administration Expenses; (iii) any required Taxes; and (iv) Court awarded Litigation Expenses; and (v) any other fees or expenses approved by the Court.

       w.     "Notice and Administration Expenses" means all expenses incurred in connection with the preparation, printing, and mailing of the Settlement Notice; the preparation and publication of the Publication Notice; providing notice to the Class by mail, publication and other means; receiving and reviewing claims; applying the Plan of Allocation; corresponding with Class Members; distributing the proceeds from the Net Settlement Fund; and the costs of the Claims Administrator.

       x.     "Notices" means the Settlement Notice and Publication Notice, collectively, as well as any other notice required or approved by the Court in connection with this Settlement.

       y.     "Pedder" means Defendant Simon Pedder.

8

z.    "Person" and "Persons" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity, any legal representative, and their spouses, heirs, predecessors, successors, representatives, agents, or assignees.

aa.    "Plaintiffs" means Lead Plaintiff and the Class Members.

bb.    "Plan of Allocation" means the plan that Lead Plaintiff will submit to the Court at a later date and upon notice to the Class that shall be utilized for distribution of the Net Settlement Fund to Authorized Claimants in a manner consistent with the terms of this Stipulation, and as approved by the Court.

cc.    "Proof of Claim" means the form which is to be sent to members of the Class substantially in the form attached hereto as Exhibit A-2.

dd.    "Publication Notice" means the notice of the proposed Settlement which shall be published in *PR Newswire* and *Investor's Business Daily*, substantially in the form attached hereto as Exhibit A-3.

ee.    "Released Parties" means the Defendant Releasees and the Released Plaintiff Parties collectively.

ff.    "Released Plaintiff Parties" means Lead Plaintiff, Lead Counsel, and each of their past, present or future directors, officers, employees, partners, agents, representatives, parents, subsidiaries and affiliates, members, principals, agents, underwriters, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants or auditors, financial or investment advisors or consultants, banks or investment bankers, personal or legal representatives, predecessors, successors, assigns, spouses, marital communities, heirs, related or

9

affiliated entities, and any entity in which Lead Plaintiff has a controlling interest.

gg.     "Response Deadline" means the last date on which Class Members may submit a request for exclusion, or objection to the Settlement. The Response Deadline is to be determined by the Court, as set out in the Preliminary Approval Order.

hh.     "Schwieterman" means Defendant William D. Schwieterman.

ii.     "Settled Claims" means any and all rights, claims, or causes of action of every nature and description, including both known and Unknown Claims, asserted by Lead Plaintiff or the Class in this Action, including those alleged in the AC and the TAC, arising out of, relating to, or in connection with the facts, allegations, events, transactions, acts, failures to act, occurrences, statements, disclosures, representations, misrepresentations, or omissions by any of the Defendants and/or the Defendant Releasees that were alleged or could have been alleged in this Action, and relate to the purchase or acquisition of Chelsea common stock during the Settlement Class Period.  "Settled Claims" includes without limitation claims based on or related to the Securities Exchange Act of 1934, the Securities Act of 1933, and violations of any other federal or state statute or common law.  "Settled Claims" includes without limitation any claims based on allegedly intentional, reckless, or negligent conduct, misstatements, or omissions.

jj.     "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

kk.     "Settlement Amount" means $5,500,000, cash.

ll.     "Settlement Class Period" means the period from September 20, 2010 through May 21, 2012, both dates inclusive.

mm.     "Settlement Fund" means the Settlement Amount plus any interest earned

10

on any monies held in the Escrow Account.

nn.     "Settlement Hearing" means the preliminary hearing to be held by the Court to determine preliminarily whether the proposed Settlement is fair, reasonable and adequate and should be approved, and directing the Notices.

oo.     "Settlement Notice" means the Notice of Pendency and Settlement of Class Action which is to be sent to Class Members substantially in the form attached hereto as Exhibit A-1.

pp.     "Settling Parties" means, collectively, Defendants Chelsea, Pedder, and Schwieterman and Lead Plaintiff.

qq.     "Stipulation" means this Stipulation and Agreement of Settlement.

rr.     "Taxes" means all federal, state, local or other taxes on the income earned by the Settlement Fund and expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants).

ss.     "Termination Notice" shall have the meaning set forth in ¶36 below.

tt.     "Transfer Records" means records identifying Persons who purchased or otherwise acquired Chelsea common stock during the Settlement Class Period.

uu.     "Unknown Claims" means any and all Settled Claims which Lead Plaintiff or any Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of Defendants' Releasees, and any Defendants' Claims which Defendants did not know or suspect to exist in their favor at the time of the release of the Released Plaintiff Parties, which if known might have affected the decision to enter into the Settlement.  With respect to any and all Settled Claims and Defendants' Claims, the parties stipulate and agree that upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each Class Member shall be deemed to

11

have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendants acknowledge, and other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Defendants' Claims was separately bargained for and was a key element of this Settlement.

## RELEASES

2. The obligations incurred pursuant to this Stipulation are in full and final disposition of the Action with respect to all Released Parties and any and all Settled Claims and Defendants' Claims.

3. As of the Effective Date, Lead Plaintiff and each Class Member, and each of their respective predecessors, successors, assigns, parents, subsidiaries, affiliates, agents, representatives, heirs, executors, trustees, and administrators, by operation of the Judgment, will release and forever discharge each and every Settled Claim, as against each and all of the Defendant Releasees and shall forever be barred and enjoined from commencing, instituting or maintaining any of the Settled Claims against the Defendant Releasees.

4. As of the Effective Date, Defendants by operation of the Judgment, will release and forever discharge each and every Defendants' Claim, and shall forever be barred and enjoined from commencing, instituting or maintaining any of Defendants' Claims against any of

the Released Plaintiff Parties.

5. Only those Class Members filing valid and timely Proofs of Claim shall be entitled to participate in the Settlement and receive a distribution from the Net Settlement Fund. The Proof of Claim to be executed by Class Members shall release all Settled Claims against the Released Parties, and shall be substantially in the form contained in Exhibit A-2 attached hereto. All Class Members shall be bound by the releases set forth in this Stipulation, whether or not they submit a valid and timely Proof of Claim.

## CLASS CERTIFICATION

6. For purposes of this Settlement only, Defendants stipulate to (i) certification of the Action as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (ii) the appointment of Lead Plaintiff as representative of the Class; and (iii) the appointment of Lead Counsel as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Lead Plaintiff will move for, and Defendants shall not oppose, entry of the Preliminary Approval Order substantially in the form of Exhibit A attached hereto, which will certify the Action to proceed as a class action for purposes of this Settlement only and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

## THE SETTLEMENT CONSIDERATION

7. In full settlement of the Settled Claims, including without limitation the claims asserted in the Action against Defendants, and in consideration of the releases specified in ¶¶ 2-5, above, Chelsea shall pay or cause to be paid the Cash Settlement Amount of $5,500,000 to be paid into the Escrow Account within fifteen (15) business days after the Preliminary Approval Order is entered and Lead Plaintiff provides Defendants' Counsel with complete and accurate wiring instructions, payment address, and a complete and accurate W-9 form.

13

## USE AND ADMINISTRATION OF THE SETTLEMENT FUND

8.     The Settlement Fund may be used (i) to pay any Taxes; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court; (iv) to pay any other fees and expenses approved by the Court; and (v) to pay claims of Authorized Claimants determined valid for payment.  The Settlement Fund shall be the sole source of attorneys' fees, and plaintiffs will have no recourse against Defendants or the Defendant Releasees for attorneys' fees.

9.     Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission or determination of Lead Counsel, the Escrow Agent or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.  Lead Plaintiff, Class Members and Lead Counsel shall have no recourse against Defendants or Defendant Releasees regarding any of the foregoing.

10.    The Net Settlement Fund shall remain in the Escrow Account until the Effective Date, whereafter the Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶19-30 hereof.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account in United States

14

Treasury Bills or, if approved by each of the Lead Counsel and Lead Plaintiff, in money market funds with one or more of the fifty (50) largest banking institutions in the United States, and shall collect and reinvest all interest accrued thereon. Lead Counsel has structured the Escrow Account so that it will qualify as a "qualified settlement fund," as that term is defined in Treas. Reg. §1.468B-1, which has been promulgated under Section 468B of the Internal Revenue Code of 1986, as amended) and the parties hereto accordingly agree to treat the Settlement Fund as a Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-1, and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for timely filing tax returns and any relevant tax filings and documentation relating thereto for the Settlement Fund and timely paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund. Defendants' Counsel as transferor agrees to provide promptly to Lead Counsel the required statement described in Treasury Regulation §1.468B-3(e).

11.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent without prior order of the Court. Any Tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph, and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settlement Fund shall indemnify and hold Defendants and Defendant Releasees harmless for Taxes and related expenses (including without limitation, taxes payable by reason of any such indemnification).

12.     Lead Counsel may pay from the Escrow Account Notice and Administration Expenses up to $300,000 without further order of the Court.

13.    Lead Counsel may pay from the Settlement Amount all reasonable costs and expenses associated with the administration of the Settlement, including, without limitation, the actual costs of identifying and notifying Class Members, disseminating the Notices, the administrative expenses incurred and fees charged by the Claims Administrator in connection with mailing notices and processing the submitted claims, and any other Notice and Administration Expenses.  In the event that the Settlement is terminated, all monies paid on behalf of Defendants into the Settlement Fund shall be returned to the party who made the payment, with interest actually earned, except that amounts used to pay for Notice and Administration Expenses, up to $300,000, shall not be returned.

14.    Lead Counsel will apply to the Court for a Class Distribution Order, on notice to Defendants' Counsel, approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing the payment of the Net Settlement Fund to Authorized Claimants.

15.    This is not a claims-made settlement.  As of the Effective Date, neither Defendants nor any Person paying the Settlement Amount or any portion of the Settlement Amount on behalf of Defendants shall have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Proofs of Claim filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

16.    The Claims Administrator will administer the Settlement under Lead Counsel's supervision and subject to the jurisdiction of the Court for all members of the Class.  Defendants

16

and Defendant Releasees will have no responsibility for the administration of the Settlement, and shall have no liability to the Class in connection with such administration, Notice and Administration Expenses, or any related costs or expenses.  On a schedule to be set by the Court, Lead Counsel will cause the Claims Administrator to mail the Settlement Notice to those members of the Class whose addresses may be identified through reasonable effort.  Lead Counsel will publish the Publication Notice of the proposed Settlement on one occasion in *PR Newswire* within ten (10) days of the mailing of the Notice, and on one occasion in *Investors Business Daily*, or in such other form or manner as may be ordered by the Court.  Lead Counsel will post the Settlement Notice and Proof of Claim form on a website where they will be available to Class Members.

## ATTORNEYS' FEES AND EXPENSES

17.     At any time prior to distribution to the Class, upon reasonable notice to Class Members, Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees not to exceed 33.3% of the Settlement Fund, plus interest therein, plus reimbursement of expenses, plus interest thereon.  Defendants will take no position on any request for attorneys' fees by Lead Counsel.  Defendants and Defendant Releasees shall have no liability for attorneys' fees or expenses.  The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any attorneys' fees awarded by the Court shall be paid from the Settlement Fund to Lead Counsel immediately upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to the obligation of Lead Counsel to refund to the Settlement Fund, within fifteen (15) business days, the amount received by each plus accrued interest at the rate paid on the Escrow Account by the financial institution holding it, to the extent necessary if: as a result of any appeal and/or

17

further proceeding on remand, or successful collateral attack, the fee or cost award is reduced or reversed; the award order does not become final; the Settlement itself is voided by any party as provided herein; or the Settlement is later reversed or modified by any court.

18.     The procedure for and the allowance or disallowance of any application for attorneys' fees and litigation expenses are not part of the Settlement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement.  Any order or proceedings relating to attorneys' fees, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the Effective Date or the effectiveness or finality of the Order and Final Judgment and the release of the Settled Claims.  The finality of the Settlement shall not be conditioned on any ruling by the Court concerning Lead Counsel's application for attorneys' fees and expenses.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

19.     Defendants shall provide or cause to be provided to the Claims Administrator and/or Lead Counsel, within seven (7) days of entry of an order preliminarily approving the Settlement, Transfer Records identifying Persons who purchased or otherwise acquired Chelsea common stock during the Settlement Class Period.

20.     The Claims Administrator shall determine each Authorized Claimant's pro rata share of the Net Settlement Fund in accordance with ¶¶27-28 below and the Plan of Allocation.

21.     Lead Plaintiff shall propose to the Court a Plan of Allocation pursuant to which the Net Settlement Fund shall be distributed to Authorized Claimants, and shall seek approval of the Court for such Plan of Allocation at the Final Fairness Hearing.  Approval of the proposed Plan of Allocation set forth in the Settlement Notice is not a condition to the Settlement and Effective Date.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or

the Settlement in accordance with ¶36 or otherwise based on this Court's or any appellate court's ruling solely with respect to the Plan of Allocation or any plan of allocation in the Action. Defendants have no responsibility or liability for allocation of the Net Settlement Fund.

22.    All cash distributions to Authorized Claimants shall be from the Net Settlement Fund pursuant to an approved Plan of Allocation.

23.    To receive a cash distribution from the Net Settlement Fund, a Class Member must be an Authorized Claimant pursuant to the procedures set out in this Settlement Agreement or by order of the Court, and must submit a Proof of Claim.

24.    Each Authorized Claimant who wishes to receive a distribution from the Net Settlement Fund must complete and submit a Proof of Claim (i) by first-class mail, such that it is postmarked no later than the date set forth in the Notices, or (ii) so that it is actually received at the address on the Proof of Claim form by the date stated in the Notices, unless that date is extended by order of the Court. The address to which the Proof of Claim must be mailed shall be stated in the Proof of Claim form itself and shall also be printed in the Notices.

25.    The Proof of Claim must be sworn on oath or made subject to the penalties of perjury pursuant to 28 U.S. C. § 1746, must be supported by such documents and other information as called for in the Proof of Claim, and must be submitted by the date provided thereon. A Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed first-class postage prepaid and addressed in accordance with the instructions thereon, provided that it is received before the motion for the Class Distribution Order is filed. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

26.    The Proof of Claim shall be substantially in the form of Exhibit A-2 attached

19

hereto.

27.     The validity of each Proof of Claim filed will be initially determined by the

Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The

Claims Administrator shall promptly advise the claimant in writing if it determines to reject the

claim.  Neither Lead Counsel, nor its designees or agents, nor Defendants, nor Defendants'

Counsel shall have any liability arising out of such determination.  If any claimant whose claim

has been rejected in whole or in part desires to contest such rejection, the claimant must, within

twenty (20) days after the date of the Claims Administrator's mailing of the writing rejecting the

claimant's claim, serve upon the Claims Administrator a notice and statement of reasons

indicating the claimant's grounds for contesting the rejection along with any supporting

documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim

cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the

Court for summary resolution, without any right of appeal or review.  Any such claimant shall be

responsible for his, her or its own costs, including, without limitation, attorneys' fees, incurred in

pursuing any dispute.  All proceedings with respect to the administration, processing and

determination of claims described in this Stipulation and the determination of all controversies

relating thereto, including disputed questions of law and fact with respect to the validity of

claims, shall be subject to the jurisdiction of the Court.

28.     All initial determinations as to the validity of a Proof of Claim, the amount of any

claims and the calculation of the extent to which each Authorized Claimant will participate in the

Distribution Amount, the preparation and mailing of distributions to Authorized Claimants, and

the distribution of the Distribution Amount shall be made by the Claims Administrator.  The

administration of the Net Settlement Fund, and decisions on all disputed questions of law and

fact with respect to the validity of any Proof of Claim or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court. All Class Members expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

29. Unless otherwise ordered by the Court, any Class Member who fails to submit a valid and timely Proof of Claim shall be barred from receiving a distribution from the Net Settlement Fund. Any Class Member who fails to submit a valid and timely Proof of Claim shall nevertheless be bound by the Settled Claims as to the Defendant Releasees and by all proceedings, orders and judgments in the Action even if he, she or it does not receive a distribution from the Net Settlement Fund and/or has pending, or subsequently initiates, any litigation, arbitration or other proceeding, or has any Claim, against any or all of the Defendants that is, or relates in any way to, any Settled Claim.

30. The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after all claims have been processed and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to communicate with the Claims Administrator concerning such rejection or disallowance.

## REQUESTS FOR EXCLUSION

31. Any Class Member may seek to be excluded from the Class and the Settlement provided for in this Stipulation by submitting a written request for exclusion in conformity with the requirements set forth in the Notices. Any members of the Class so excluded shall not be bound by the terms of the Stipulation, or be entitled to any of its benefits, and shall not be bound by the Judgment and/or other order of the Court, whether pursuant to this Stipulation or otherwise.

21

32.     Class Members requesting exclusion from the Class shall file a written request prior to the Response Deadline that (i) provides the name, address, telephone number, and signature of the Class Member requesting exclusion; (ii) states the specific reasons for the request for exclusion, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention; (iii) identifies the number of shares the Class Member purchased and sold and the prices paid and received during the Settlement Class Period, and (iv) includes documents sufficient to prove the Class Member's membership in the Class, such as the number of Chelsea common stock purchased, acquired and sold during the Settlement Class Period, as well as the dates and prices of each such purchase, acquisition, or sale.  Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this section shall be bound by the Stipulation.

### SUPPLEMENTAL AGREEMENT

33.     Simultaneously herewith, the Settling Parties are executing a "Supplemental Agreement."  Unless otherwise directed by the Court, the Supplemental Agreement will not be filed with the Court. The Settling Parties may, in accordance with the terms set forth in the Supplemental Agreement, terminate the Settlement and this Stipulation under certain conditions set forth in the Supplemental Agreement if Lead Counsel is unable to cure these conditions in accordance with the terms of the Supplemental Agreement.  Such election must be done in writing to the other Settling Parties.  If required by the Court, the Supplemental Agreement and/or any of its terms may be disclosed to the Court for purposes of approval of the Settlement, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Supplemental Agreement, particularly the opt-out threshold.  In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation and Settlement shall become null and void and of no

22

further force and effect.

## TERMS OF THE PRELIMINARY APPROVAL ORDER

34. Promptly after execution of this Stipulation, Lead Counsel shall apply to the Court for entry of an order preliminarily approving settlement of the Action, substantially in the form of the Preliminary Approval Order annexed hereto as Exhibit A.

## TERMS OF THE JUDGMENT

35. If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall jointly request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B. The Judgment shall contain a provision barring claims for contribution to the fullest extent permitted by 15 U.S.C. §78u-4(f)(7) and any other applicable law or regulation, by or against Defendants. Nothing herein is intended to broaden the language of the Private Securities Litigation Reform Act of 1995.

36. The Settlement, including the certification of the Action as a class action, is conditioned upon final court approval; payment in full of the Settlement Amount; dismissal of the Action as to Defendants with prejudice; and the Judgment becoming Final. Should those conditions not be met, the Settlement shall be null and void.

## TERMINATION

37. Defendants and Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any part of it without reasonable leave to amend; (c) the Court's declining to enter the Judgment in any material respect; (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals or the Supreme Court of

23

the United States; or (e) in the event that the Court enters a judgment in a form other than the Judgment ("Alternative Judgment") and none of the parties hereto elects to terminate this Settlement, the date upon which such Alternative Judgment is modified or reversed in any material respect by the United States Court of Appeals or the Supreme Court of the United States. The award of attorneys' fees, if any, to Lead Counsel is not a basis for termination of this Settlement Agreement.

38.     In addition, as set forth in ¶33, pursuant to the terms of the Settling Parties' Supplemental Agreement, Defendants shall have, in their sole discretion, the option to terminate this Settlement. This option must be exercised on or before ten (10) days prior to the date set by the Court for the Final Fairness Hearing, or the option is waived. If Defendants exercise their option to terminate this Settlement, Defendants shall provide written notice to Lead Counsel. The Settling Parties shall, if this option is exercised, proceed in all respects as if this Stipulation had not been executed.

39.     Except as otherwise provided herein, in the event the Settlement is terminated or fails to become effective for any reason, then the Settlement shall be without prejudice and none of its terms shall be effective or enforceable except as specifically provided herein, the parties to this Stipulation shall be deemed to have reverted to their respective status in the Action as of March 10, 2016 and, except as otherwise expressly provided, the parties in the Action shall proceed in all respects as if this Stipulation and any related orders had not been entered. In such event, the fact and terms of this Stipulation shall not be admissible in any trial or any other proceedings of this Action or any other action or proceeding.

40.     If the Settlement Amount, or any portion thereof, is to be returned pursuant to the provisions of this Stipulation, any portion of the Settlement Amount previously paid by or on

behalf of Defendants, plus interest earned less any Taxes paid or due (in which case the deducted funds will be used to pay such Taxes) with respect to such interest income, and less any Notice and Administration Expenses actually paid or incurred up to $300,000, shall be returned to the source of such payments.

## USE OF STIPULATION, JUDGMENT OR ALTERNATIVE JUDGMENT

41. Upon Final Judgment, Defendants and/or Defendant Releasees may file this Stipulation and/or the Judgment or Alternative Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, *collateral estoppel*, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies. The Settling Parties may file this Stipulation and/or the Judgment or Alternative Judgment in any action that may be brought to enforce the terms of this Stipulation and/or the Judgment or Alternative Judgment. All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

42. With the exception of the foregoing, this Stipulation, whether or not consummated, and any negotiations, proceedings, agreements, documents or statements relating to the Stipulation, the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

      a. shall not be admissible in any action or proceeding for any reason, other than an action to enforce the terms hereof;

      b. shall not be described as, construed as, offered or received against Defendants as evidence of and/or deemed to be evidence of any presumption, concession, or admission by Defendants of: the truth of any fact alleged by Lead Plaintiff; the validity of any

claim that has been or could have been asserted in the Action or in any litigation; the deficiency of any defense that has been or could have been asserted in the Action or in any litigation; or any liability, negligence, fault, or wrongdoing of Defendants;

    c.  shall not be described as, construed as, offered or received against Lead Plaintiff or any Class Members as evidence of any infirmity in the claims of said Lead Plaintiff and the Class or that damages recoverable under the Complaint would not have exceeded the Settlement Amount;

    d.  shall not be described as, construed as, offered or received against any of the parties to this Stipulation or any of the Defendant Releasees or Plaintiff Released Parties, in any other civil, criminal or administrative action or proceeding, provided, however, that (i) if it is necessary to refer to this Stipulation to effectuate the provisions of this Stipulation, it may be referred to in such proceedings, and (ii) if this Stipulation is approved by the Court, the Defendant Releasees may refer to it to effectuate the liability protection granted to them hereunder; and

    e.  shall not be described as or construed against Defendants, Defendant Releasees or the Lead Plaintiff and any Class Members as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been awarded to said Lead Plaintiff or Class Members after trial.

## MISCELLANEOUS PROVISIONS

  43.  The Settling Parties agree that the United States District Court for the Western District of North Carolina has exclusive jurisdiction over this Settlement.

  44.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

  45.  Chelsea warrants that it is not insolvent, nor will the payment of the Settlement

26

Amount render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.

46.     If a case is commenced in respect of any of the Defendants under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of any of the Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction, and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Lead Plaintiff, the Parties shall jointly move the Court to vacate and set aside the releases given and the Judgment entered in favor of Defendants pursuant to this Stipulation, which releases and Judgment shall be null and void, and the parties shall be restored to their respective positions in the litigation as of March 10, 2016, and any cash amounts in the Settlement Fund shall be returned as provided above.

47.     The parties to this Stipulation and Agreement of Settlement intend the Settlement of the Action to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and Class Members against Defendants with respect to the Settled Claims.  Accordingly, Lead Plaintiff and Defendants agree not to assert in any forum that the Action was brought or defended in bad faith or without a reasonable basis.  The Settling Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the maintenance, defense, or settlement of the Action.  The parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with

27

experienced legal counsel. Lead Plaintiff and Class Members agree not to seek any additional discovery of any form from any Defendant related to Settled Claims.

48. The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Stipulation. Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

49. This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

50. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

51. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Lead Counsel and enforcing the terms of this Stipulation.

52. The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

53. This Stipulation and its exhibits constitute the entire agreement among the parties hereto concerning the Settlement of the Action as against Defendants, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and

28

the exhibits other than those contained and memorialized in such documents.

54.     This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the parties to this Stipulation shall exchange among themselves original signed counterparts.

55.     This Stipulation shall be binding when signed, but the Settlement shall be effective only on the condition that the Effective Date occurs.

56.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

57.     The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Delaware without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

58.     All counsel and any other Person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

59.     This Stipulation shall not be construed more strictly against one Settling Party than another Settling Party merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

    **IN WITNESS HEREOF**, Lead Plaintiff and Defendants Chelsea, Pedder, and

29

Schwieterman have caused this Stipulation to be executed, by their duly authorized attorneys, as of May 23, 2016.

**FARUQI & FARUQI, LLP**

By:_____
Richard W. Gonnello
Megan M. Sullivan
Katherine M. Lenahan
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 983-9330

**WARD BLACK LAW**
Nancy Meyers  (NC Bar No. 23339)
208 W. Wendover Avenue
Greensboro, NC 27401
Tel:  (336) 333-2244

*Attorneys for Lead Plaintiff and the Class*

**WILSON SONSINI GOODRICH & ROSATI, PC**

By:_____
Barry M. Kaplan
Gregory L. Watts
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Tel: (206) 883-2500

**WYRICK ROBBINS YATES & PONTON LLP**
Lee M. Whitman  (NC Bar No. 20193)
Sarah M. Johnson (NC Bar No. 32752)
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607
Tel: (919) 781-4000

*Attorneys for Defendants Chelsea, Pedder, and Schwieterman*

30

Schwieterman have caused this Stipulation to be executed, by their duly authorized attorneys, as of May 23, 2016.

**FARUQI & FARUQI, LLP**

By: _RW Gonnello_

Richard W. Gonnello
Megan M. Sullivan
Katherine M. Lenahan
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: (212) 983-9330

**WILSON SONSINI GOODRICH & ROSATI, PC**

By:_____

Barry M. Kaplan
Gregory L. Watts
701 Fifth Avenue, Suite 5100
Seattle, WA 98104
Tel: (206) 883-2500

**WARD BLACK LAW**

Nancy Meyers  (NC Bar No. 23339)
208 W. Wendover Avenue
Greensboro, NC 27401
Tel:  (336) 333-2244

**WYRICK ROBBINS YATES & PONTON LLP**

Lee M. Whitman  (NC Bar No. 20193)
Sarah M. Johnson (NC Bar No. 32752)
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607
Tel: (919) 781-4000

*Attorneys for Lead Plaintiff and the Class*

*Attorneys for Defendants Chelsea, Pedder, and Schwieterman*

30

**CERTIFICATE OF SERVICE**

   I hereby certify that on May 27, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail address denoted on the attached Electronic Mail Notice List.


            By:   */s/ Richard W. Gonnello*
                Richard Gonnello